**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **ISIDORE PAIEWONSKY ASSOCIATES, INC.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **VAN CAEM KLERKS GROUP BV a/k/a** ) <br> **VCKG2 B.V. and VCKG B.V. and WCSG B.V.** ) <br> **n/k/a BETA LOGISTICS B.V., as legal** ) <br> **successors in interest to VAN CAEM** ) <br> **KLERKS GROUP B.V.,** ) <br> ) <br> **Defendants** ) <br> ) <br> v. ) <br> ) <br> **DUTY FREE ST. THOMAS, LLC, a U.S.** ) <br> **Virgin Islands limited liability company,** ) <br> ) <br> **Third-Party Defendants.** ) | Case No. 3:18-cv-0056 |

**ATTORNEYS:**

**MATTHEW J. DUENSING, ESQ.**
STRYKER, DUENSING, CASNER & DOLLISON
ST THOMAS, U.S. VIRGIN ISLANDS
    *FOR PLAINTIFF*

**ANDREW L. CAPDEVILLE, ESQ.**
LAW OFFICES OF ANDREW L. CAPDEVILLE, P.C.
ST THOMAS, U.S. VIRGIN ISLANDS
    *FOR DEFENDANTS*

**DANIEL FOODMAN, ESQ.**
WNF LAW, P.L.
MIAMI, FLORIDA
    *FOR DEFENDANTS*

**MEMORANDUM OPINION**

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** are Plaintiff's Motion for Summary Judgment (ECF No. 93) and Defendants' Cross-Motion for Summary Judgment (ECF No. 105). Plaintiff Isidore

Case: 3:18-cv-00056-RAM-RM    Document #: 135    Filed: 09/22/23    Page 2 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **2** of **14**

Paiewonsky Associates, Inc. ("IPA") commenced this action against Defendants Van Caem Klerks Group BV and Beta Logistics B.V. alleging Count I—Breach of Contract Guaranty and Count II—Debt. (ECF No. 1.) Defendants answered and asserted affirmative defenses, including that they are released from the obligations under the guaranty at issue. (ECF No. 9.) Defendants filed a third-party complaint against Duty Free St. Thomas, LLC ("Duty Free") seeking indemnification and alleging unjust enrichment. (ECF No. 14.) The Clerk of Court entered default against Duty Free. (ECF No. 53.) In support of their motions, Plaintiff and Defendants submitted their respective statements of undisputed material facts pursuant to LRCi. 56.1. (ECF Nos. 94, 106.) Defendants submitted their response to the Plaintiff's statement of undisputed facts and statement of additional facts in dispute. (ECF No. 104.) Plaintiff submitted its response to Defendants' statement of additional facts in dispute. (ECF No. 109.) Plaintiff did not submit its response to Defendants' statement of undisputed material facts in support of their cross-motion. For the following reasons, the Court will grant in part and deny in part the Plaintiff's motion for summary judgment and deny the Defendants' cross-motion for summary judgment.

## I. UNDISPUTED FACTS

The Court finds the following facts to be undisputed for purposes of the summary judgment motions.

(a) <u>Mall Lease</u>

On November 30, 2011, Plaintiff, as the Landlord of the A.H. Riise Mall ("the Mall"), entered into the Mall Lease agreement ("the Mall Lease") with Duty Free, as the Tenant, and AHR Management, LLC, as the Manager, pursuant to which Plaintiff would lease Demised Premises located in the Mall for the period of ten years. (ECF No. 94-2 & 3 §§ 1.A, 1.B.) The base annual rent for the first year was $570,000, payable in equal monthly installments, to be increased in accordance with Section 4. A of the Mall Lease. (*Id.* § 1.C.) Duty Free paid a base monthly rent of $42,574.98. (ECF No. 94 ¶ 69; ECF No. 106 ¶ 58.) Wim van Esveld, Chief Financial Officer of Van Caem Klerks Group BV, signed the Mall Lease on behalf of Duty Free. (ECF No. 94-3.)

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 3 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **3** of **14**

Section 14 of the Mall Lease describes five events that constitute Duty Free's default: (i) failure to pay the base annual rent, or any annual rent installment, or any monthly installment of Duty Free's proportionate share of taxes, insurance, electricity or operating costs, at the time it is due without any demand; (ii) failure to pay any additional rent or any installment at the time it is due and such failure continues for more than 10 days after written notice; (iii) violation or failure or neglect to keep and perform any of the covenants, conditions and agreements provided in the Mall Lease and such failure continues for more than 10 days after written notice; (iv) deserting the Demised Premises; or (v) failure to deliver to Plaintiff the certificates described in the Mall Lease. (*Id.* § 14.A.) Section 14 also provides that, in case of default, Duty Free's right of possession shall terminate and that Plaintiff may, at its option, terminate the Mall Lease by giving Duty Free written notice of its intention to terminate the Mall Lease on a date specified in the notice, at which time all Duty Free's rights shall terminate and Duty Free shall remain liable as provided in the Mall Lease. (*Id.*).

Section 24 of the Mall Lease provides that the Mall Lease may be modified only by a written agreement signed by all the parties, and that all of Duty Free's duties and obligations under the Mall Lease shall survive the expiration or termination of the Mall Lease for any reason. (*Id.* § 24.F.) The Mall lease is governed by the laws of the U.S. Virgin Islands. (*Id.* § 24.H.) The Guaranty section of the Mall Lease provides that, simultaneous to the execution of the Mall Lease, Duty Free shall cause Van Caem Klerks Group BV to execute a Guaranty of Lease, in which the Guarantor shall guarantee Duty Free's obligations under the Mall Lease. (*Id.* § 24.Q.) The Mall Lease agreement was amended four times: on March 7, 2012, August 1, 2013, October 8, 2014, and December 10, 2014. (ECF No. 94 ¶¶ 15-19.)

(b) <u>Guaranty of Lease</u>

On November 30, 2011, in consideration of Plaintiff's entering into the Mall Lease, Van Caem Klerks Group BV, as Guarantor, executed the Guaranty of Lease, by which it guaranteed all of Duty Free's obligations under the Mall Lease, as provided in the Guaranty of Lease. (ECF No. 94-1.) Wim van Esveld, Chief Financial Officer of Van Caem Klerks Group BV, signed the Guaranty of Lease on behalf of Van Caem Klerks Group BV. (*Id.*) Defendants

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 4 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **4** of **14**

are successors in interest to Guarantor. (ECF No. 94 ¶¶ 5-13; ECF No. 106 ¶¶ 5, 16, 22, 23, 25.)

Section 1 of the Guarantee of Lease provides that Guarantor guarantees to Plaintiff as the Landlord, "absolutely, unconditionally and irrevocably," the full and prompt payment of all sums which may at any time become due under the Mall Lease (monetary obligations) and the full and timely performance and observance of all terms of the Mall Lease (non-monetary obligations). (ECF No. 94-1 § 1.1.) Section 1 of the Guarantee of Lease also provides that, if at any time Duty Free fails to make payment of its monetary obligations when due or fails to perform and observe any of the non-monetary obligations when required and, such a failure constitutes a default under the Mall Lease, Guarantor shall immediately pay Duty Free's monetary obligations and any arrears, and immediately perform Duty Free's non-monetary obligations. (*Id.*) The Guarantee of Lease is an absolute and unconditional guaranty of payment and performance, the liabilities of Grantor are irrevocable, and Grantor, and Duty Free shall be jointly and severally liable. (*Id.* § 1.2.)

Section 2 of the Guaranty of Lease provides that Guarantor waives all notices or demands given or required to be given to Duty Free under the Mall Lease, including any notice of default under the Mall Lease and any notice of modification, extension or indulgence granted to Duty Free. (*Id.* § 2.) Section 3.1 of the Guaranty of Lease provides that the Guarantee of Lease shall remain in effect until Duty Free has discharged all of its obligations. (*Id.* § 3.1.) Section 3.2, No Termination, provides that the Guarantee of Lease shall be a continuing guaranty and that the Guarantor's liability shall not be affected, terminated, modified, diminished, or impaired because of any of the following actions: (a) any renewal, modification, amendment, extension or waiver of the Mall Lease or any of its terms, even if the effect of such shall be to increase the Guarantor's obligations; (b) the extension, modification, or amendment of the Mall Lease; (c) any extension of time granted by Plaintiff; (d) any action or inaction Plaintiff may take or fail to take against Duty Free; (e) any obligation under the Mall Lease becoming unenforceable; (f) any assignment of interest by Duty Free or sublease of the Demised Premises; (g) any use or change in use of the Demised Premises; (h) damage or destruction or taking by eminent domain of any part of

Case: 3:18-cv-00056-RAM-RM   Document #: 135   Filed: 09/22/23   Page 5 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **5** of **14**

Demised Premises; (i) any other dealings between Plaintiff and Duty Free; or (j) any bankruptcy, insolvency, dissolution, liquidation, receivership, trusteeship, reorganization, assignment of benefits of creditors or similar proceedings affecting Duty Free. (*Id.* § 3.2.) The Guarantee of Lease is governed by the laws of the U.S. Virgin Islands. (*Id.* § 4.3.)

    (c) September 2017 Hurricanes Irma and Maria

As a result of the September 2017 Hurricanes Irma and Maria making landfall on St. Thomas, the Mall remained closed for business from 3:00 P.M. on September 5, 2017 (ECF No. 106-10), until it re-opened on November 3, 2017, as announced by Plaintiff in its October 25, 2017 notice to all the Mall's tenants. (ECF No. 94-13.) The October 25, 2017 notice of the Mall reopening announced that the Mall has been cleaned up, all damage assessments were completed, and temporary repairs made where necessary to ensure that the Mall is fully functional for the upcoming season. (*Id.*). It also announced that all tenants are granted a 100% rent abatement for the months of September and October of 2017, and through November 7, 2017, and 50% rent abatement from November 8, 2017, through November 30, 2017. (*Id.*) Duty Free paid its September 2017 rent on September 6, 2017, and October 2017 rent on October 4, 2017. (ECF No. 106-12 at 2.)

On October 6, 2017, while the Mall was closed, Duty Free informed Plaintiff that it attempted to remove its inventory from its retail space in the Mall to sell on the open market but was unable to access it because the locks were changed, notwithstanding that its rent obligations for September and October 2017 were paid, and requested access at 8:00 A.M. on Monday, October 9, 2017. (ECF No. 106-11; ECF No. 106-8 at 173-174.) The Mall reopened for business on November 3, 2017, but Duty Free did not open for business. (ECF No. 106 ¶ 30.)

    (d) Notice of Default

On November 8, 2017, Plaintiff served a Notice of Default on Duty Free through its registered agent, stating that, as of that date, Duty Free failed to re-open and operate, to have inventory stocked, to have staff available at the Demised Premises to operate its business, as required by Sections 5.A, 5.E (i) and 5. E.(iv) of the Mall Lease and appeared to have deserted the Demised Premises. (ECF No. 106-14.) Plaintiff provided ten days from the date of the

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 6 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **6** of **14**

notice, plus three days under the Notice provisions of Section 20 of the Mall Lease, to cure the defaults by restocking inventory, re-hiring staff and opening for business in accordance with the applicable provisions of the Mall Lease. (*Id.*) The November 8, 2017 Notice of Default was mailed to Van Caem Klerks Group BV by overnight delivery Federal Express service. (*Id.*) Wim van Esveld testified that he received the November 8, 2017 Notice of Default and contacted his attorney. (ECF No. 108-1 at 9.)

On November 20, 2017, Duty Free responded to the November 8, 2017 notice, disputing its contentions, asserting *force majeure* and impracticality of performance under the Mall Lease, noting that its rent obligations under the Mall Lease are current through January 18, 2017, and expressing interest in a mutual termination of the Mall Lease. (ECF No. 94-16.)

On December 5, 2017, Plaintiff sent a letter to Duty Free, asserting, *inter alia*, that nothing in the language of the Mall Lease excused Duty Free's obligations to reopen and resume its operations based on an alleged *force majeure* event and the doctrine of impracticality does not apply. (ECF No. 94-17.) Plaintiff's December 5, 2017 letter asserted that any extension of a rent abatement beyond the re-open date was revoked because it was without any consideration from Duty Free and depended on the assumption that Duty Free would re-open for business as noted in the October 25, 2017 notice; thus, Duty Free was in monetary default as of December 1, 2017, not January 18, 2018. (*Id.*) The December 5, 2017 letter asserted that, in light of Duty Free's failure to cure the defaults within ten days pursuant to the Mall Lease, its right to possession had terminated and Plaintiff intended to proceed with finding a replacement tenant. (*Id.*) Plaintiff requested that Duty Free send a written confirmation that it concurs with and has no objection to the termination of the Mall Lease. (*Id.*)

(e) <u>Notice to Quit and Notice of Intent to Enforce Landlord's Lien and Security Interest</u>

On January 16, 2018, Plaintiff served on Duty Free a Notice to Quit and Notice of Intent to Enforce Landlord's Lien and Security Interest, referencing the November 8, 2017 Notice enumerating five defaults and asserting Duty Free failed to cure the defaults. (ECF No. 94-18.) The January 16, 2018 Notice requested payment of rent due as of January 16, 2018, and

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 7 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **7** of **14**

advised Duty Free that, pursuant to Section 14 of the Mall Lease, the Mall Lease was declared terminated and requested that Duty Free vacate the Demised Premises. (*Id.*) The January 16, 2018 Notice also advised Duty Free that failure to vacate the Demised Premises within three calendar days of the Notice's receipt would result in an action for eviction, forcible entry and detainer. (*Id.*)

(f) Agreement to Relinquish Demised Premises

On February 2, 2018, Plaintiff and Duty Free entered into the Agreement to Relinquish Demised Premises to Plaintiff to avoid litigation on the issue of possession of the Demised Premises and to allow Plaintiff to seek a replacement tenant. (EF No. 94-19.) The Agreement to Relinquish Demised Premises provided that, except as set forth in it, all rights, remedies and obligations under the Mall Lease shall remain as existed prior to February 2, 2018, and nothing in the Agreement to Relinquish Demised Premises shall be construed as a waiver of rights, remedies or obligations under the Mall Lease, other than Duty Free's right to possession of the Demised Premised, which is expressly terminated and relinquished. (*Id.* § 5.) The Agreement to Relinquish Demised Premises is governed by the laws of U.S. Virgin Islands. (*Id.* § 10.)

(g) Plaintiff's Actions after Regaining Possession of the Demised Premises

Plaintiff reached out to a number of local and regional players based on its extensive knowledge of the local, regional, and international duty-free markets in order to find a replacement tenant. (ECF No. 106-4 at 92-93.) On February 27, 2018, Plaintiff entered into a lease agreement with OSHER, LLC, as a tenant, and AHR Management, LLC as a Manager, to lease the Demised Premises commencing on April 1, 2018. (ECF No. 94-21 §§ 1.A, 1.B.) The February 27, 2018 lease provides that the base annual rent for the first-year lease is $262,980, payable in equal monthly installments of $21,915, with the second and third year annual base rent to be paid in accordance with Section 4. A of the lease. (*Id.* § 1.C.) The base annual rent for the fourth year is $274,668, payable in equal monthly installments of $22,889, with the fifth through tenth lease years annual rent to be paid in accordance with Section 4.A of the lease. (*Id.*) The new tenant occupies all the retail space previously occupied

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 8 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **8** of **14**

by Duty Free, but certain office space that Duty Free previously occupied remains vacant. (ECF No. 94 ¶ 74.)

## II. LEGAL STANDARD

The standard for disposing of summary judgment motions is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). A factual dispute is material when its resolution has "the potential to affect the outcome of the suit" and "[a] dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *SodexoMAGIC, LLC v. Drexel Univ.,* 24 F.4th 183, 203–04 (3d Cir. 2022) (citation omitted).

In this matter, both sides have moved for summary judgment. With regards to these cross-motions, such motions "are no more than a claim by each side that it alone is entitled to summary judgment." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Consequently, "[i]t is well settled that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon the facts that are not genuinely disputed." *Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir. 1976).

## III. DISCUSSION

Plaintiff argues that Defendants breached their duty under the Guaranty of Lease to fulfill Duty Free's monetary and non-monetary obligations as provided in the Mall Lease upon Duty Free's default, causing damages to Plaintiff. Defendants seek summary judgment based on their affirmative defense, arguing that they were discharged of their obligations under the Guarantee of Lease because Plaintiff and Duty Free materially modified the Mall Lease by terminating it without Defendants' consent when they entered into the Agreement to Relinquish the Demised Premises, which was not contemplated under the Guaranty of Lease, was detrimental to Defendants, and increased their risk.

### A. Count 1—Breach of Contract Guarantee

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 9 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **9** of **14**

To prevail on a claim for breach of contract under Virgin Islands law, a plaintiff must establish: "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Robertson v. Banco Popular de Puerto Rico*, 2023 VI 3, ¶ 16 (Mar. 24, 2023) (citation omitted).

The parties do not dispute that Defendants are successors in interest to the Guarantor who executed the Guarantee of Lease, pursuant to which the Guarantor agreed to assume absolutely, unconditionally and irrevocably, Duty Free's monetary obligations (all sums which may at any time become due under the Mall Lease) and non-monetary obligations (the full and timely performance and observance of all the terms under the Mall Lease) in case of Duty Free's default under the Mall Lease. It is undisputed that Duty Free defaulted as per the November 8, 2017 Notice of Default and that Guarantor waived all notices given or required to be given to Duty Free under the Mall Lease. It is also undisputed that, upon Duty Free's default, Defendants failed to pay Duty Free's monetary obligations and failed to fulfill Duty Free's non-monetary obligations, as guaranteed by the Guaranty of Lease. Based on the undisputed facts, the Court finds that Plaintiff suffered damages as a result of the Defendants' failure to fulfil the obligations under the Guarantee of Lease upon Duty Free's default, including in connection with leasing of the Demised Premises to OSHER, LLC, the tenant who replaced Duty Free, that did not commence until April 1, 2018, at a lower base annual rent.

However, the amounts and specific categories of damages resulting from Defendants' breach of the Guarantee of Lease are disputed. Some of the Plaintiff's statements in its LRCi 56 statement are internally contradictory. For example, in paragraph No. 66, Plaintiff states that it "incurred significant costs for . . . removing unauthorized and improper fixtures, including dry wall cubicles installed without permission of IPA; and, repairing damage to an air conditioning unit," citing to pages 111-131 of the deposition of its Rule 30(b)(6) witness, James Eilen ("Eilen"). However, Eilen testified that most of the fixtures in the space occupied by Duty Free were "pre-existing," with some newer once in "a small area that they had renovated," but all the fixtures were "left for the next tenant," and the space was mostly capable of being occupied by a new tenant after Duty Free's alleged breach, except that Plaintiff "needed to clean the floors,[,] the shelves and the fixtures," to make it "a broom clean

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 10 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **10** of **14**

space," (ECF No. 94-11, Tr. at 118-119, 130.) Eilen did not mention dry wall cubicles or an air conditioning unit in his testimony.

Plaintiff asserts in paragraph 78 of its LRCi. 56.1 statement that, as of May 21, 2019, the total owed under the agreement is $1,756,649.80, citing to Exhibit 21 (ECF No. 94-22), purporting to be an "Accounts Receivable Balance Statement." However, no affidavit based on personal knowledge was submitted in connection with Exhibit 21, as required by Fed. R. Evid. 602, explaining who created the exhibit, the content of the exhibit, the calculation method used to obtain the amounts asserted, and citing to the pertinent sections of the Mall Lease authorizing each category of the requested amounts. Plaintiff's own interpretation of Exhibit 21's content, in paragraph Nos. 79 and 80 of its LRCi 56.1 statement, is not admissible evidence. While Plaintiff asserts in footnote No. 71 of its LRCi 56.1 statement that it "has produced all documents in support of this summary," none of the documents supporting Exhibit 21 was submitted in support of paragraph No. 78 asserting the total due to Plaintiff.

The Court finds that no material facts in dispute exist in connection with Plaintiff's Count 1—Breach of Contract Guaranty, and that Plaintiff established that Defendants breached their Guarantee of Lease and are liable to Plaintiff for damages resulting from the breach in the amount to be determined at trial, unless Defendants can establish their affirmative defense, namely, that their obligations under the Guarantee of Lease were discharged as a matter of law by the February 2, 2018 Agreement to Relinquish Demised Premises.

### B. Affirmative Defense as a Matter of Law

The parties do not contend that any of the terms of the Mall Lease or the Guarantee of Lease are ambiguous. Since the material facts, except the amounts and specific categories of damages resulting from Defendants' breach of the Guarantee of Lease, are undisputed, the issue is whether Defendants established their affirmative defense as a matter of law.

Defendants assert that, under Virgin Islands law, "[b]ecause the Agreement to Relinquish terminating the Mall Lease, for which VCKG guaranteed, was entered into between Landlord and Tenant without VCKG's consent, this modification of the Mall Lease" constitutes a material modification that was not contemplated by the Guarantee of Lease.

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 11 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **11** of **14**

(ECF No. 107 at 13.) Defendants rely on the Restatement of Security § 128 (1941)[1] and *Mahogany Assocs. v. Paragon Invs., Inc.*, 17 V.I. 311 (Terr. V.I. 1981). Plaintiff argues that, at the time it entered into the Agreement to Relinquish Demised Premises with Duty Free, the Mall Lease had already been terminated by the January 16, 2018 notice pursuant to Section 14 of the Mall Lease, and no language in the Agreement to Relinquish Demised Premises can be interpreted as an agreement to terminate the Mall Lease or a modification of the parties' obligations.

> The Virgin Islands statute provides:
>
> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

1 V.I.C. § 4. In 1996, the American Law Institute published the Restatement of the Law Third Suretyship and Guaranty, announcing that it "should be regarded as completely superseding Division II of the Restatement of Security." Restatement (Third) of Suretyship & Guaranty Foreword (1996). Division II of the Restatement of Security includes § 128, which was superseded by Section 41 of the Restatement Third of Suretyship and Guaranty.[2]

---

[1] Restatement (First) of Security § 128 (1941) provides:
> Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment
> (a) the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety, and
> (b) the compensated surety is
> (i) discharged if the modification materially increases his risk, and
> (ii) not discharged if the risk is not materially increased, but his obligation is reduced to the extent of loss due to the modification.

[2] Restatement (Third) of Suretyship and Guaranty § 41 (1996) provides:
> If the principal obligor and the obligee agree to a modification, other than an extension of time or a complete or partial release, of the principal obligor's duties pursuant to the underlying obligation:
> (a) any duty of the principal obligor to the secondary obligor of performance or reimbursement is correspondingly modified;
> (b) the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation:
> (i) if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification;
> (ii) in other cases, to the extent that the modification would otherwise cause the secondary obligor a loss;

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **12** of **14**

The Restatements of Law promulgated by the American Law Institute represent "non-binding persuasive authority." *Simon v. Joseph*, 59 V.I. 611, 623 (2013). Pursuant to *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011) and its progeny, *Matthew v. Herman*, 56 V.I. 674 (V.I. 2012) and *Simon*, 59 V.I. 611, in the absence of binding Virgin Islands Supreme Court precedent issued post-*Banks*, an independent analysis must be conducted to determine "the common law without automatically and mechanically following the Restatements." *Banks*, 55 V.I. at 979. The *Banks* analysis requires consideration of three non-exclusive factors: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon*, 59 V.I. at 623.

The Court finds that three fatalities attend to Defendants' affirmative defense under Section 128 of the Restatement of Security. First, Section 128 of the Restatement of Security, on which Defendants rely, is fatal to their affirmative defense because it is not binding or persuasive authority and, more importantly, it was made obsolete when it was superseded by Section 41 of the Restatement Third of Suretyship & Guaranty. In consequence, the only case on which Defendants rely for their affirmative defense under Section 128 of the Restatement of Security, *Mahogany Assocs.*, 17 V.I. 311, decided by the Territorial Court of the Virgin Islands, Division of St. Croix, in 1981, is also not binding or persuasive authority.

Second, in the absence of binding Supreme Court of the Virgin Islands precedent on the affirmative defense under Section 128 of the Restatement of Security or Section 41 of the Restatement Third of Suretyship & Guarantee that superseded Section 128, Defendants' failure to conduct the *Banks* analysis is fatal to their affirmative defense. Defendants were

---

(c) to the extent that the secondary obligor is not discharged by operation of paragraph (b) from its duties:
(i) the secondary obligation is correspondingly modified; but
(ii) if the modification of the underlying obligation changes the amount of money payable thereunder, or the timing of such payment, the secondary obligor may perform the secondary obligation as though there had been no modification;
(d) the secondary obligor has a claim against the obligee to the extent provided in § 37(4).

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 13 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **13** of **14**

aware of the requirement for the *Banks* analysis, since they cited *Freund v. Liburd*, No. ST-11-CV-730, 2016 WL 3752986 (V.I. Super. July 7, 2016) for the proposition that "[i]f the Court finds that the contract terms are unambiguous, then the Court will interpret it as a matter of law." (ECF No. 107 at 9.) In *Freund*, the Superior Court of the Virgin Islands considered the issue of "whether a guarantor is bound by the principal obligor's future obligations created after the guarantor has executed the guaranty agreement." *Freund,* 2016 WL 3752986, at *4. The *Freund* court conducted the *Banks* analysis on "the legal effect that a continuing guaranty has on guarantor's obligations" under Restatement Third of Suretyship and Guaranty § 16. *Id.* at *6 n. 38. Despite their awareness of *Banks* and the circumstances requiring the *Banks* analysis, Defendants elected not to even mention *Banks* or analyze their affirmative defense under the *Banks* factors in their brief. *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 429 (2016) ("there is absolutely no basis in any of this Court's precedents for the proposition that attorneys are not required to fully brief all questions of law relevant to the issues that are being litigated, including all three *Banks* factors"). Where, as here, Defendants recognized that "a *Banks* analysis is required, yet fail[ed] to even remotely attempt to brief the three *Banks* factors," the Court finds that they waived the issue. *Id.*

Third, contrary to Defendants' assertion that the Agreement to Relinquish Demised Premises terminated the Mall Lease, the unambiguous and uncontested language in the Plaintiff's January 16, 2018 Notice to Quit and Notice of Intent to Enforce Landlord's Lien and Security Interest, states that, pursuant to the unambiguous and uncontested Section 14 of the Mall Lease, "the Mall Lease is hereby declared terminated." (ECF No. 94-18 at 2.) It is undisputed that the Agreement to Relinquish Demised Premises was executed on February 2, 2018, after the Mall Lease was terminated by Plaintiff, as provided by Section 14 of the Mall Lease. Unlike in *Mahogany Assocs.*, which involved a modification of the existing, non-terminated lease, signed by the lessor and leassee that reflected a rent increase, 17 V.I. at 312, here, it is undisputed that the Mall Lease terminated prior to the Agreement to Relinquish Demised Premises. Accordingly, the Court finds that the Agreement to Relinquish Demised Premises does not constitute a modification of the Mall Lease.

Case: 3:18-cv-00056-RAM-RM Document #: 135 Filed: 09/22/23 Page 14 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Caem Klerks Group BN, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **14** of **14**

The Court finds that Defendants' affirmative defense fails based on the facts of this case. Accordingly, Defendants are not entitled to summary judgment on its affirmative defernse claim.

### C. Count II – Debt[3]

As explained above, the amount of damages on Plaintiff's Count I (Breach of Contract Guaranty) is disputed. Since the Plaintiff's cause of action under Count II (Debt) seeks the same amounts that the Court found disputed, denying the Plaintiff's motion for summary judgment on the cause of action for debt is warranted.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment on Count I on the issue of liability only, with the amount of damages to be determined at trial. Similarly, the Court will deny Plaintiff's motion for summary judgment on Count II as to the issue of damages. The Court will deny the Defendants' cross-motion for summary judgment based on their affirmative defense. An appropriate Order follows.

**Date:** September 22, 2023　　　　　　　　　　　*/s/ Robert A. Molloy*
　　　　　　　　　　　　　　　　　　　　　　　**ROBERT A. MOLLOY**
　　　　　　　　　　　　　　　　　　　　　　　**Chief Judge**

---

[3] To prevail under Virgin Islands common law cause of action for debt, the plaintiff must show that "the defendant owes a certain amount" and "the defendant is or should be obligated to pay that amount." *FirstBank Puerto Rico v. Webster*, 2023 VI SUPER 24U, ¶ 8, 2023 WL 3476392, at *6 (V.I. Super. May 15, 2023).