## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| ISIDOR PAIEWONSKY ASSOCIATES, INC., | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. 3:18-cv-0056 <br> ) |
| VAN CAEM KLERKS GROUP BV a/k/a VCKG2 B.V. and VCKG B.V. and WCSG B.V. n/k/a BETA LOGISTICS B.V., as legal successors in interest to VAN CAEM KLERKS GROUP B.V., | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants and Third-Party Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| DUTY FREE ST. THOMAS, LLC, a U.S. Virgin Islands limited liability company, | ) <br> ) <br> ) |
| Third-Party Defendant. | ) <br> ) |

**ATTORNEYS:**

**MATTHEW J. DUENSING, ESQ.**
**JOSEPH D. SAUERWEIN, ESQ.**
LAW OFFICES OF DUENSING & CASNER
ST THOMAS, U.S. VIRGIN ISLANDS
    FOR PLAINTIFF

**DANIEL FOODMAN, ESQ.**
THE FOODMAN FIRM, P.A.
MIAMI, FLORIDA

**ANDREW L. CAPDEVILLE, ESQ.**
ST. THOMAS, U.S. VIRGIN ISLANDS
    FOR DEFENDANTS

## **MEMORANDUM OPINION**

**MOLLOY, Chief Judge.**

    **THIS MATTER** came before the Court on a bench trial on damages held on January 17, 2024. On September 22, 2023, the Court granted in part the Plaintiff's motion for summary judgment on Count I (Breach of Contract Guarantee) and Count II (Debt) as to

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **2** of **14**

liability only and denied it as to damages and denied the Defendants' cross-motion for summary judgment. (ECF No. 135, 136.) Sebastian Paiewonsky-Cassinelli ("S. Cassinelli"), Plaintiff's Officer and Director, Michael J. Cook ("Cook"), Plaintiff's Chief Financial Officer, and Steven Jamron ("Jamron"), Plaintiff's expert in real estate appraisal, testified at the bench trial. Plaintiff seeks the following damages:

> Defendants are liable to Plaintiff for damages totaling Two Million, Five Hundred Eighty-Five Thousand, Eight Hundred Eighty and 09/100 U.S. Dollars ($2,585,880.09), as of December 31, 2023, resulting from the failure of DFST to comply with the terms and conditions of the Lease. These damages are separated into two categories. The first category represents Rent and related charges through expiration of the Lease on June 30, 2021. This includes $1,029,556.46 for the difference in base rent; $43,110.10 for the difference in Property Taxes; $114,953.11 for the difference in Utilities; $173,100.42 for the difference in CAM, Maintenance and Security Charges; and less $140,491.15 in rent paid by DFST. In addition, Plaintiff seeks simple pre-judgment interest at a rate of 18% per annum as set forth in the Lease, which applies to the total amounts owed. At that rate total interest due and owing under the Lease is $1,335,622.73, as of December 31, 2023. As such, under the Lease formula Plaintiff's total "Rent Receivables" loss recoverable here is $2,555,851.67. These amounts have already been reduced by the Rents and additional Rent paid by the new tenant Osher, LLC. The Second category of damages recoverable here is additional expenses related to Tenant's Lease defaults including Rent abatements to impacted tenants totaling $11,968.92; necessary repairs not performed by Tenant under the lease totaling $61,697; and cleaning costs totaling $10,575, less $54,212.50 recovered from Tenant's security deposit. These additional recoverable damages total $30,028.42. Therefore, total losses recoverable for "Rent Receivables" with interest is $2,585,880.09, which Plaintiff seeks at trial. Plaintiff also is entitled to an award of attorneys' fees and costs permitted under the Lease and Virgin Islands Law. Plaintiff will submit a separate filing identifying this amount following the trial in this matter.

(ECF No. 162.)

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court issues the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. On November 30, 2011, Plaintiff Isidor Paiewonsky Associates, Inc., as the Landlord of the A.H. Riise Mall ("the Mall"), entered into the Mall Lease

Case: 3:18-cv-00056-RAM-GAT    Document #: 169    Filed: 09/18/24    Page 3 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **3** of **14**

      agreement ("the Mall Lease") with Duty Free St. Thomas, LLC ("Duty Free"), as the Tenant, and AHR Management, LLC, as the Manager, pursuant to which Plaintiff would lease Demised Premises, consisting of the Retail Premises (approximately 7,197 square feet on the first floor of the building) the Temporary Premises to be surrendered by the Tenant no later than May 31, 2012 (approximately 460 square feet on the first floor of the building), the Storage Premises (approximately 2,500 square feet om the second floor of the building), and the Office Premises (approximately 973 square feet on the third floor of the building), located in the Mall having a street address of 36 and 37 Dronningens Gade, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for the period of ten years, ending at midnight on June 30, 2021.

2. The base annual rent for the first lease year was $570,000, payable in equal monthly installments, to be increased for each succeeding lease year in accordance with Section 4. A of the Mall Lease.

3. Wim van Esveld, Manager of Duty Free, signed the Lease.

4. Section 14 of the Mall Lease describes five events that constitute Duty Free's default: (i) failure to pay the base annual rent, or any annual rent installment, or any monthly installment of Duty Free's proportionate share of real estate taxes, insurance, electricity or operating costs, after the time it is due without any demand; (ii) failure to pay any additional rent or any installment at the time it is due and such failure continues for more than 10 days after written notice; (iii) violation or failure or neglect to keep and perform any of the covenants, conditions and agreements provided in the Mall Lease and such failure continues for more than 10 days after written notice; (iv) deserting the Demised Premises; or (v) failure to deliver to Plaintiff the certificates described in the Mall Lease.

5. Section 14 also provides that, in case of default, Duty Free's right of possession shall terminate and that Plaintiff may, at its option, terminate the Mall Lease by giving Duty Free written notice of its intention to terminate the Mall Lease on

Case: 3:18-cv-00056-RAM-GAT   Document #: 169   Filed: 09/18/24   Page 4 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **4** of **14**

a date specified in the notice, at which time all Duty Free's rights shall terminate and Duty Free shall remain liable as provided in the Mall Lease.

6. Section 24, Paragraph F, of the Mall Lease provides that the Mall Lease may be modified only by a written agreement signed by all the parties, and that all of Duty Free's duties and obligations under the Mall Lease shall survive the expiration or termination of the Mall Lease for any reason. The Mall lease is governed by the laws of the U.S. Virgin Islands.

7. Section 24, Paragraph Q, of the Mall Lease provides that simultaneous with the execution of the Mall Lease, Duty Free shall cause Van Caem Klerks Group BV to execute a Guaranty of Lease, in which the Guarantor shall guarantee Duty Free's obligations under the Mall Lease.

8. On November 30, 2011, Van Caem Klerks Group BV, executed the Guaranty of Lease.

9. Wim van Esveld, Chief Financial Officer of Van Caem Klerks Group BV, signed the Guarantee of Lease on behalf of Van Caem Klerks Group BV.

10. Defendants are successors in interest to Guarantor.

11. The Guarantee of Lease is governed by the laws of the U.S. Virgin Islands.

12. The Mall Lease agreement was amended four times: on March 7, 2012, August 1, 2013, October 8, 2014, and December 10, 2014.

13. The March 7, 2012 First Amendment to Mall Lease expanded the Demised Premises to include the Expansion Office Space (approximately 3,590 square feet on the third floor of the building) and to exclude the Office Premises (approximately 973 square feet on the third floor of the building), which the Landlord took back, and provided for the Landlord's contribution to the Tenant's build-out expense for the Expansion Office Space.

14. The August 1, 2013 Second Amendment to Mall Lease expanded the Demised Premises to include the Expansion Retail Space (approximately 952 square feet on the first floor of the building), to extend the term of the Temporary Space, to provide for reduced rent on the 482 square feet Swatch Space and to provide term under which the Landlord will take back the Swatch Space.

Case: 3:18-cv-00056-RAM-GAT    Document #: 169    Filed: 09/18/24    Page 5 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **5** of **14**

15. The October 8, 2014 Third Amendment to Mall Lease reduced the Demised Premises to exclude the Expansion Retail Space in the Second Amendment (approximately 952 square feet on the first floor of the building).

16. The December 10th 2014 Fourth Amendment to Mall Lease reduced the Demised Premises to exclude the Main Street Space (approximately 871 square feet on the first floor of the building) effective January 1, 2015, confirmed the Swatch Reduction effective January 1, 2015, reduced the base rent accordingly with respect to the Swatch Space, but provided for the Tenant's right to continue to occupy the Swatch Space for the retail sale of its products, confirmed December 1, 2014 as the date of surrender of the Temporary Premises, and provided for the potential rental to a third party of the Waterford Space (approximately 469 square feet on the first floor of the building) requiring the Tenant to surrender the Waterford Space after written notice that Landlord or Manager has secured a new tenant for the Waterford Space within 30 days from the notice and no later than May 31, 2016.

17. Duty Free paid a base monthly rent of $42,574.98, effective January 1, 2015.

18. As a result of the September 2017 Hurricanes Irma and Maria making landfall on St. Thomas, the Mall remained closed for business from 3:00 P.M. on September 5, 2017, until it re-opened on November 3, 2017, as announced by Plaintiff in its October 25, 2017 notice to all the Mall's tenants.

19. The October 25, 2017 notice of the Mall reopening announced that the Mall has been cleaned up, all damage assessments were completed, and temporary repairs made where necessary to ensure that the Mall is fully functional for the upcoming season.

20. It also announced that all tenants are granted a 100% rent abatement for the months of September and October of 2017, and through November 7, 2017, and 50% rent abatement from November 8, 2017, through November 30, 2017.

21. Duty Free paid its September 2017 rent on September 6, 2017, and October

Case: 3:18-cv-00056-RAM-GAT Document #: 169 Filed: 09/18/24 Page 6 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **6** of **14**

2017 rent on October 4, 2017.

22. On October 6, 2017, while the Mall was closed, Duty Free informed Plaintiff that it attempted to remove its inventory from its retail space in the Mall to sell on the open market but was unable to access it because the locks were changed, notwithstanding that its rent obligations for September and October 2017 were paid, and requested access at 8:00 A.M. on Monday, October 9, 2017.

23. The Mall reopened for business on November 3, 2017, but Duty Free did not open for business.

24. On November 8, 2017, Plaintiff served a Notice of Default on Duty Free through its registered agent, stating that, as of that date, Duty Free failed to re-open and operate, to have inventory stocked, to have staff available at the Demised Premises to operate its business, as required by Sections 5.A, 5.E (i) and 5. E.(iv) of the Mall Lease and appeared to have deserted the Demised Premises.

25. Plaintiff's November 8, 2017 Notice of Default provided ten days from the date of the notice, plus three days under the Notice provisions of Section 20 of the Mall Lease, to cure the defaults by restocking inventory, re-hiring staff and opening for business in accordance with the applicable provisions of the Mall Lease.

26. Wim van Esveld testified that he received the November 8, 2017 Notice of Default and contacted his attorney.

27. On November 20, 2017, Duty Free responded to the November 8, 2017 notice, disputing its contentions, asserting *force majeure* and impracticality of performance under the Mall Lease, noting that its rent obligations under the Mall Lease are current through January 18, 2018, and expressing interest in a mutual termination of the Mall Lease.

28. On December 5, 2017, Plaintiff sent a letter to Duty Free, asserting, *inter alia*, that nothing in the language of the Mall Lease excused Duty Free's obligations to reopen and resume its operations based on an alleged *force majeure* event and the doctrine of impracticality does not apply.

Case: 3:18-cv-00056-RAM-GAT  Document #: 169  Filed: 09/18/24  Page 7 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **7** of **14**

29. Plaintiff's December 5, 2017 letter asserted that any extension of a rent abatement beyond the re-open date was revoked because it was without any consideration from Duty Free and depended on the assumption that Duty Free would re-open for business as noted in the October 25, 2017 notice; thus, Duty Free was in monetary default as of December 1, 2017, not January 18, 2018.

30. The December 5, 2017 letter asserted that, in light of Duty Free's failure to cure the defaults within ten days pursuant to the Mall Lease, its right to possession had terminated and Plaintiff intended to proceed with finding a replacement tenant.

31. Plaintiff requested that Duty Free send a written confirmation that it concurs with and has no objection to the termination of the Mall Lease.

32. On January 16, 2018, Plaintiff served on Duty Free a Notice to Quit and Notice of Intent to Enforce Landlord's Lien and Security Interest, referencing the November 8, 2017 Notice enumerating five defaults and asserting Duty Free failed to cure the defaults.

33. The January 16, 2018 Notice requested payment of rent due as of January 16, 2018, and advised Duty Free that, pursuant to Section 14 of the Mall Lease, the Mall Lease was declared terminated and requested that Duty Free vacate the Demised Premises.

34. The January 16, 2018 Notice also advised Duty Free that failure to vacate the Demised Premises within three calendar days of the Notice's receipt would result in an action for eviction, forcible entry and detainer.

35. At the time Duty Free's default, the Demised Premises Duty Free was leasing constituted of the Retail Premises as amended (approximately 6,326 square feet on the first floor of the building), the Storage Premises (approximately 2,500 square feet on the second floor of the building) and the Expansion Office Space (approximately 3,580 square feet on the third floor of the building), a total of approximately $12,406 square feet.

36. On February 2, 2018, Plaintiff and Duty Free entered into the Agreement to

Case: 3:18-cv-00056-RAM-GAT    Document #: 169    Filed: 09/18/24    Page 8 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **8** of **14**

Relinquish Demised Premises to Plaintiff to avoid litigation on the issue of possession of the Demised Premises and to allow Plaintiff to seek a replacement tenant.

37. The Agreement to Relinquish Demised Premises provided that, except as set forth in it, all rights, remedies and obligations under the Mall Lease shall remain as existed prior to February 2, 2018, and nothing in the Agreement to Relinquish Demised Premises shall be construed as a waiver of rights, remedies or obligations under the Mall Lease, other than Duty Free's right to possession of the Demised Premised, which is expressly terminated and relinquished.

38. The Agreement to Relinquish Demised Premises is governed by the laws of U.S. Virgin Islands.

39. On February 27, 2018, Plaintiff entered into a lease agreement with Osher, LLC ("Osher"), as a tenant, and AHR Management, LLC, as a Manager, to lease the Demised Premises commencing on April 1, 2018.

40. The February 27, 2018 lease provides that the base annual rent for the first-year lease is $262,980, payable in equal monthly installments of $21,915, with the second and third year annual base rent to be paid in accordance with Section 4. A of the lease.

41. The base annual rent for the fourth year is $274,668, payable in equal monthly installments of $22,889, with the fifth through tenth lease years annual rent to be paid in accordance with Section 4.A of the lease.

## II. DISCUSSION

### A. Failure to Mitigate Damages

"In the Virgin Islands, 'the policy of the courts . . . is to promote the mitigation of damages.'" *Gimenez v. De Leon*, No. ST-15-RV-4, 2016 WL 10805685, at *4 (V.I. Super. Nov. 4, 2016). "Even when a tenant breaches his lease, a landlord has a duty to mitigate her damages by making reasonable efforts to re-rent the premises." *Anderson v. Spitzer*, No. ST-07-SM-540, 2008 WL 11519180, at *2 (V.I. Super. Feb. 12, 2008). Failure to mitigate damages is an affirmative defense and the burden is on the proponent to establish it. *Rondon v. Caribbean*

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **9** of **14**

*Leasing & Eco Transportation, Inc.*, 75 V.I. 189, 198, 2022 VI SUPER 2, ¶ 14 (V.I. Super. 2022) ("Rondon asserts numerous affirmative defenses to Defendants/Counterclaimants' counterclaims of breach of contract and debt," including "failure to mitigate damages"); *Storage Tech. Corp. v. Tr. Co. of New Jersey*, 842 F.2d 54, 57 (3d Cir. 1988) (mitigation of damages is a doctrine that applies in a breach of contract and "the burden of proving that losses could have been reduced or avoided 'is always upon the party who has broken the contract'") (citation omitted).

> A duty to mitigate may arise as a stated obligation under a valid lease, or by operation of law. In determining the existence of a duty to mitigate damages, an examination of the lease should be made since the obligations of the parties may be spelled out therein. If the lease does not prescribe a duty to mitigate, then the existence of such a duty depends on whether one is imposed by the law of the jurisdiction.

*H.E. Lockhart Mgmt., Inc. v. Hughes*, No. CIV. 303/1998, 1999 WL 159843, at *4 (Terr. V.I. Mar. 19, 1999) ("*HELM*"). To mitigate damages in the Virgin Islands, a party must take affirmative and reasonable steps appropriate under the circumstances to avoid loss. *Id.* at *5.

Paragraph 14.A of the Mall Lease governing Tenant's Default provides, in pertinent part:

> If Landlord elects to terminate this Lease, everything contained in this Lease on the part of Landlord to be done and performed shall cease without prejudice, subject however, to the right of Landlord to recover from Tenant all rent and any other sums accrued up to the time of termination or recovery of possession by Landlord, whichever is later, and any other monetary damages or loss of reserved rent sustained by Landlord.

Paragraph 14.B of the Mall Lease governing Tenant's Default provides:

> In the event of any such default, Tenant nevertheless agrees to remain answerable for any and all damages which Landlord may sustain by reason of such default, including, without limitation, deficiency in or loss of rent, attorneys' fees, court costs, other collection costs, and all expenses of subdividing the Demised Premises and/or placing the Demised Premises in first-class rentable condition. Landlord reserves full power, which is hereby acceded to by Tenant, to relet the Demised Premises, or any part thereof, for such rent and for such term(s) (which may be greater or less than the period which otherwise would have constituted the balance of the Term of this Lease) and for such uses and upon such terms and conditions (which may

Case: 3:18-cv-00056-RAM-GAT    Document #: 169    Filed: 09/18/24    Page 10 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **10** of **14**

>include concessions or free rent and alterations of the Demised Premises), as Landlord, in its absolute discretion may determine, and Landlord may collect and receive any rents payable by reason of such reletting.  If the full rent reserved under this Lease (and any of the costs, expenses, or damages indicated herein) shall not be realized by Landlord, Tenant shall be liable for all damages sustained by Landlord, including without limitation, deficiency of rent, attorneys' fees, brokerage fees, cost of collection and expenses of subdivision and/or placing the Demised Premises in first class rentable condition.  Landlord, in putting the Demised Premises in good order or preparing the same for rerental may, at Landlord's option, make such alterations, repairs, or replacements in the Demised Premises as Landlord, in its sole judgment, considers advisable and necessary for the pw-pose of reletting the Demised Premises, and the making of such alterations, repairs, or replacements shall not operate or be construed to release Tenant from liability hereunder as aforesaid.  Nothing contained herein shall impose upon Landlord any obligation to relet the Demised Premises, and Landlord shall in no event be liable in any way whatsoever for the failure to relet the Demised Premises, or for the failure to collect rent after reletting the Demised Premises if the subsequent tenant defaults.

The Mall Lease in this case, like the lease in *HELM,* does not prescribe a duty to mitigate; rather, it provides "for continued payments by the tenant in the event of tenant's default, even where the landlord terminated the lease, damages for tenant's breach are recoverable."  *HELM*, 1999 WL 159843, at *4. Like in HELM, in this case "mitigation is required." *Id.*

Cassinelli testified that upon obtaining access to the premises leased to Duty Free, he, his brother Filippo, and the Plaintiff's executive team reached out to a series of prospective operators to find new tenants in duty free, liquor and fragrances business categories under challenging operational conditions after Hurricanes Irma and Maria, while hotels were closed, cruise ships were not visiting, the Main Street enhancement project was ongoing inhibiting traffic, and the roads were under construction. Cassinelli explained that one of the challenges was that other tenants' leases had restrictions as to what type of tenants can be brought. For example, major watch and jewelry tenants do not allow another one to be placed next to them. In retail business, having empty shelves hurts adjacent tenants, so Plaintiff was under pressure by other tenants to find a replacement for Duty Free. Cassinelli testified that Plaintiff did not enlist a broker because, in his experience, using a

Case: 3:18-cv-00056-RAM-GAT   Document #: 169   Filed: 09/18/24   Page 11 of 14

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **11** of **14**

broker has not been effective; rather, Plaintiff has used its many contacts and word of mouth, which has proven to be successful in renting spaces in the Mall. Plaintiff sent out six proposals to potential tenants, but they pushed hard on rent and costs, given the environment and complexity of the industry. Cassinelli's brother Filippo and Cassinelli have special knowledge of a duty-free business and through their many contacts, they found Osher, an international operator with multiple locations who operates similar business. According to Cassinelli, Plaintiff negotiated hard with Osher, as it was the only credible tenant that could be found. Osher's rent was 50% of Duty Free's rent and Osher was to pay 50% of the operating expenses, but that was the best that could be achieved, given the market conditions, the conditions on the ground, including damaged infrastructure, limited foot traffic, and the fact that Osher wanted to be careful of the costs. Getting a new tenant quickly was important for the success of the entire Mall.

Jamron testified that downtown business was depressed due to road construction even prior to Hurricanes Irma and Maria. He opined that it was exceptional that Plaintiff leased to Osher so quickly under the circumstances and for what rental market value would have been at that time. Plaintiff relet the Demised Premises to Osher, commencing on April 1, 2018, at the monthly installment of $22,889 for the first lease year. However, Osher did not have any need for the office space, which remained vacant.

The Court finds that Plaintiff took affirmative steps to avoid the loss rental income resulting from Duty Free's default and those steps were reasonable under the circumstances. However, the Court also finds that Plaintiff failed to present evidence that it took any affirmative steps to avoid the loss of rental income as it relates to the office space and that failure was not reasonable. Accordingly, having failed to mitigate damages with respect to the office space, Plaintiff is not entitled to recover any damages with respect to the office space.

### B. Damages

"Typically, '[a] plaintiff claiming a breach of contract has available and need not choose between three types of damages—actual, consequential, and benefit-of-the-bargain.'" *Robertson v. Banco Popular de Puerto Rico*, 77 V.I. 574, 587, 2023 VI 3, ¶ 21 (2023).

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **12** of **14**

Cook testified that he created Accounts Receivable Balance Due from DFST/VAN CAEM (Pl.'s Exhibit 25), indicating the following requested damages:

**ACCOUNTS RECEIVABLE BALANCE DUE FROM DFST/VAN CAEM**
31-Dec-23

| | | | |
|---|---|---|---|
| Lease related receivable through 9/25/23 | | | $1,208,014.81 |
| Interest through 12/31/2023 18% | | | 723,118.60 |
| Total lease related claim - gross amount | | | $1,931,133.41 |
| Additional expenses related to lease default | | | |
| Rent abatements to impacted tenants - as of 12-31-2018 | | | $11,968.92 |
| Repairs not done by Tenant under the lease done by Landlord | $61,697.00 | | |
| Less Security Deposit | | $ 54,212.50 | $7,484.50 |
| Cleaning Costs | | | $10,575.00 |
| **TOTAL ADDITIONAL EXPENSES** | | | $ 30,028.42 |
| **TOTAL AMOUNT DUE** | | | $ **1,961,161.83** |

### *(i)   Total Lease Related Payments*

Accounts Receivable Balance Due from DFST/VAN CAEM shows the total balance for Duty Free as follows: (a) $982,056.44 base rent; (b) $43,110.10 property tax; $109,508.50 utilities; (c) $171,580.92 "CAM & Maint/Sec"; and (d) $98,241.15 credit for payment received, for a total lease payment due of $1,208,014.81.

Osher leased approximately 8,876 square feet of the Demised Premises, whereas Duty Free leased 12,406 square feet of the Demised Premises at the time of default. The difference of 3,530 square feet between the space leased by Osher and the space leased by Duty Free corresponds roughly to Duty Free's Expansion Office Space of approximately 3,580 square feet on the third floor of the building, with respect to which Plaintiff failed to mitigate damages. The office space constitutes approximately 30% of the Demised Premises leased by Duty Free. Accordingly, the Court finds that reducing the total lease payment of $1,208,014.81 by 30% is warranted under the circumstances (30% of $1,208,014.81 is

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **13** of **14**

$362,404.44). Accordingly, the Court finds that Plaintiff is entitled to $845,610.37 in total lease payment. ($1,208,014.81 - $362,404.44)

### (ii)    Interest

Accounts Receivable Balance Due from DFST/VAN CAEM indicates that 18% per annum interest of $138,887.03 for 2021, $163,886.70 for 2022, and $193,386.31 for 2023, for a total interest of $723,118.60. Cook testified that he applied 18% interest rate under paragraph 22 of the Mall Lease compounded annually. Cook explained that he took "the average of the balance" and multiplied with 18% to obtain the annual interest and then did the same for the remaining years, ending with December 2023. When asked to identify where in paragraph 22 of the Mall Lease it is indicated that the interest is compounded, Cook testified he assumed that per annum means that the interest should be compounded annually.

Paragraph 22 of the Mall Lease provides:

> If Tenant fails to pay any installment of rent on or before the day when such installment *is* due and payable, such unpaid installment shall bear interest at the rate of eighteen percent (18%) per annum, but not to exceed the highest lawful rate, from the date such installment is due and payable to the date of payment thereof by Tenant. Such interest shall constitute additional rent and shall be due and payable with the next monthly installment of rent.

Plaintiff failed to calculate interest as provided by the Mall Lease, which does not provide for annual compounded interest. The Court finds that awarding 18% interest on the total amount of lease related payments, $854,160, is warranted under the circumstances (18% of $854,160 is $152,209). Accordingly, Plaintiff is entitled to $152,209 in interest.

### (iii)    Rent Abatements to Impacted Tenants

Plaintiff seeks $11,968.92 in rent abatements to impacted tenants as of December 31, 2018. Plaintiff failed to identify any part of the Mall Lease authorizing rent abatements to impacted tenants as damages resulting from Duty Free's default or explain the basis and method for calculating that amount. The Court finds that awarding $11,968.92 is not warranted.

### (iv)    Repairs

*Isidor Paiewonsky Associates, Inc. v. Van Cael Klerks Group BV, et al.*
Case No. 3:18-cv-0056
Memorandum Opinion
Page **14** of **14**

Plaintiff seeks $7,484.50 for repairs, alleging it incurred $61,697 for repairs it had to make, which Duty Free was obligated but did not make, reduced by $54,212.50, the amount of security deposit. Cook testified that, when the Accounts Receivable Balance Due from DFST/VAN CAEM was created on December 31, 2023, he had receipts for the repairs, but he no longer had them at the time of trial, January 17, 2024. Having presented no evidence substantiating the Plaintiff's request for repairs, the Court finds that awarding $7,484.50 is not warranted.

### *(v)     Cleaning Costs*

Based on Cook's testimony that the cleaning cost of $10,575 was prepared by his predecessor and he had no documents to substantiate that amount, the Court has stricken the cleaning costs in the amount of $10,575 during the bench trial.

### III. CONCLUSIONS OF LAW

For the foregoing reasons, the Court concludes that Plaintiff is entitled to an award of $997,819.37 as damages on claims for Breach of Contract Guarantee (Count I) and Debt (Count II). Plaintiff is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. An appropriate Judgment follows.

**Dated:** September 18, 2024                    /s/ *Robert A. Molloy*
                                                 **ROBERT A. MOLLOY**
                                                 **Chief Judge**